IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR PLAZA-BONILLA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CORTAZZO, et al. | : | NO.  07-2045 |

## MEMORANDUM

**Padova, J.**                                             **March 9th, 2009**

Plaintiff Hector Plaza-Bonilla ("Plaintiff") brought this action asserting claims pursuant to

42 U.S.C. § 1983 and Pennsylvania common law against Defendants Christopher Cortazzo

("Cortazzo") and James Burkhart ("Burkhart"), both officers in the Reading Police Department.[1]

Plaintiff alleges that Defendants used excessive force and committed assault and battery against him

when they shot him as he attempted to flee arrest.  Defendants assert counterclaims in recoupment,

alleging that Plaintiff committed assault and battery against them when he struck them with a vehicle

in his attempt to flee.  Presently before the Court are Plaintiff's and Defendants' respective Motions

for Summary Judgment.  For the reasons stated below, we grant Defendants' Motion in part and deny

it in part, and deny Plaintiff's Motion in its entirety.

## I.        BACKGROUND

The undisputed facts are as follows.  At around 7:00 p.m. on July 12, 2005, Cortazzo

conducted a traffic stop of a car that had been illegally double parked in front of a known drug house

near the corner of Greenwich and Locust Streets in Reading.  (Defs.' SMF ¶¶ 1, 2.)  Burkhart was

dispatched to provide backup.  (Id. ¶ 4.)  Inside the vehicle were the driver, Jeremy Pauley

---

[1]Plaintiff also asserted a Monell claim again the City of Reading, which the parties dismissed
by stipulation.  (See Stipulation of Voluntary Dismissal (Docket No. 27).)

("Pauley"), and Plaintiff.  (Id. ¶ 3.)

When Cortazzo asked Plaintiff for his identification, Plaintiff gave Cortazzo a false name because he was in violation of his parole and did not want to be arrested.  (Id. ¶ 7.)  Cortazzo was unable to confirm Plaintiff's identity based on the information provided (id. ¶ 8), and stated that he could have arrested Plaintiff for a misdemeanor on that basis.  (Cortazzo Dep. at 43-44, 46.)  Nevertheless, Cortazzo did not arrest Plaintiff, but he did pat him down for weapons, finding none.  (Id. at 55; Cortazzo Narrative, Defs.' Ex. B, at 22.)  Plaintiff then called his mother to ask her to bring some identification to the scene.  (Plaza-Bonilla Dep. at 137-38; Burkhart Narrative, Defs.' Ex. E, at 25; Pauley Stmt., Pl.'s Ex. G, at 2.)

Cortazzo then ordered Pauley out of the car and had a conversation with him behind the car.  (Defs.' SMF ¶ 10.)  Cortazzo told Pauley that he was free to go, but that he was suspicious of Plaintiff.  (Cortazzo Narrative, Defs.' Ex. B, at 23; Pauley Stmt., Pl.'s Ex. G, at 2; Cortazzo Dep. at 47, 51-52.)  Pauley informed Cortazzo that Plaintiff's real name was "Ivancito."  (Pauley Stmt., Pl.'s Ex. G, at 2.)  Pauley also gave Cortazzo permission to search the car.  (Defs.' SMF ¶ 10.)  Pauley told Cortazzo that he would find cash that belonged to him in-between the console and seats.  (Plaza-Bonilla Dep. at 147-48; Cortazzo Dep. at 48; Burkhart Dep. at 82; Cortazzo Narrative, Defs.' Ex. B, at 23.)

Cortazzo began to search the driver's compartment while Plaintiff remained seated in the passenger seat and while the car remained running.  (Defs.' SMF ¶ 11.)  Cortazzo noticed a strong odor of alcohol on Plaintiff's breath and became concerned by Plaintiff's nervousness and his attempts to reach between the seats where a weapon could be concealed.  (Id. ¶ 12.)  Plaintiff was trying to help Cortazzo find Pauley's money, but Cortazzo told him not to move.  (Dep Tr. Plaza-

Bonilla at 147-48; Cortazzo Dep. at 60.)  Cortazzo finished searching the driver's compartment, closed the driver's side door, and walked in front of the vehicle on his way to searching the passenger's side.  (Defs.' SMF ¶ 13.)  Plaintiff then locked the doors.  (Id. ¶ 14; Plaza-Bonilla Dep. at 150-51.)

As Cortazzo walked in front of the car, Plaintiff jumped into the driver's seat and put the car into gear.  (Defs.' SMF ¶¶ 14, 16.)  Plaintiff wanted to get away because he did not want to get arrested for violating his parole.  (Id. ¶ 14.)  At that time, Burkhart and Pauley were behind the car. (Burkhart Dep. at 82, 92; Burkhart Narrative, Defs.' Ex. E, at 26.)  As Plaintiff pulled forward, he struck the vehicle parked in front of him.[2]  (Defs.' SMF ¶ 16.)  Plaintiff then put the car in reverse before again pulling forward and out of the parking space.  (Plaza-Bonilla Dep. at 155-56.)  Plaintiff struck both officers with the car.[3]  (Defs.' SMF ¶¶ 21, 29; see also Pl.'s Exs. H, J.)

_____

[2]Plaintiff and Defendants have submitted the same pictures of the scene, which include photographs of the Plaintiff's car and the parked car that Plaintiff struck.  (See, e.g., Pl.'s Ex. K.) Both cars bear visible scratches on their respective bumpers, but from these photographs we can discern no other damage.

[3]Plaintiff now denies that he ever struck the Defendants with the car.  (Pl.'s Resp. to Defs.' SMF ¶¶ 21, 29.)  However, Plaintiff admitted in his deposition that he pleaded guilty to a simple assault charge arising out of the events of July 12, 2005, and that he remembered apologizing to the Defendants for his actions at his plea hearing.  (Plaza-Bonilla Dep. at 203-04.)  Moreover, during his plea colloquy, Plaintiff admitted that, on July 12, 2005, he "did hit both officers with [his] vehicle."  (N.T. 5/12/06 at 4, Commonwealth v. Plaza-Bonilla, No. CP-06-CR-0004119-2005 (C.C.P. Berks).)  As such, Plaintiff is collaterally estopped from arguing that he did not hit Defendants with the car.

Whether a prior state court criminal proceeding has a collateral estoppel effect in subsequent civil litigation is governed by the law of the state where the criminal proceeding took place.  See Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986) (citing Bower v. O'Hara, 759 F.2d 1117, 1124 (3d Cir. 1985)).  Under Pennsylvania law, "a conviction from a guilty plea is equivalent to a conviction from a trial-by-jury."  DiJoseph v. Vuotto, 968 F. Supp. 244, 247 (E.D. Pa. 1997) (citing Commonwealth Dep't of Transp. v. Mitchell, 535 A.2d 581, 585 (Pa. 1987)).  As such, it constitutes an admission to all facts alleged in the indictment.  Mitchell, 535 A.2d at 585.  Moreover, "criminal convictions are admissible in civil actions arising from the same operative facts and

At some point thereafter, Cortazzo and Burkhart discharged their firearms at Plaintiff. Cortazzo fired one shot, which passed through both the passenger's side window and Plaintiff's left arm before lodging itself in the driver's side door.  (Id. ¶¶ 22, 27).  Burkhart fired three shots, none of which struck the Plaintiff.  (Id. ¶¶ 30, 33.)  Although the parties dispute where Cortazzo was standing and when exactly during this sequence of events he discharged his firearm, viewing the facts in the light most favorable to Plaintiff establishes that Cortazzo did not shoot at Plaintiff until after he was out of the vehicle's direct path, i.e., Cortazzo fired after he was off to the side of the car as Plaintiff was pulling out into the street.  (See Burkhart Dep. at 121 (indicating that Cortazzo discharged his weapon after he got hit and was on the curb); Burkhart Narrative, Defs.' Ex. E, at 26 (indicating that Cortazzo drew his gun and fired while Plaintiff was backing up into Burkhart); Plaza-Bonilla Dep. at 171, 174 (indicating that it was not until Plaintiff was pulling out of the parking spot onto the street that he realized Defendants were shooting at him); Pauley Stmt., Pl.'s Ex. G, at 2 (indicating that it was not until Plaintiff took off down Greenwich Street that Defendants fired at him)[4]; Plaintiff's Expert Report, Pl.'s Ex. F, at 6 (finding that the bullet damage and probable

---

circumstances [and] these convictions are conclusive evidence of the criminal acts." Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 952 (Pa. Super. Ct. 1993).

In his criminal case, Plaintiff pleaded guilty to two counts of simple assault for striking both Defendants with a vehicle.  The fact that he hit both Defendants with a car was not only relevant but necessary to support Plaintiff's conviction because it was the ultimate issue in his criminal proceeding.  Cf. Linnen v. Armainis, 991 F.2d 1102, 1105 (3d Cir. 1993) (observing that "a guilty plea entered in a state criminal proceeding would not bar a subsequent § 1983 action where the issues to be determined in the later case were neither actually litigated nor *necessary to support the judgment* entered in the prior proceeding" (citing Haring v. Prosise, 462 U.S. 306, 316-17 (1983)) (emphasis added)).  Accordingly, Plaintiff is estopped from asserting that he did not strike the Defendants with the car on July 12, 2005, and there is no genuine issue as to this material fact.

[4]Defendants argue that we may not consider Pauley's post-incident statement because it is inadmissible hearsay.  However, we may consider hearsay statements on a motion for summary judgment "if they are *capable* of admission at trial."  Shelton v. Univ. of Med. & Dentistry of N.J.,

trajectory suggested that Cortazzo could have fired the shot from the area between the front passenger's side quarter panel and the front passenger's side door).)

     After the shooting, Plaintiff continued to drive down the street and around the corner.  (Id. ¶ 34.)  Plaintiff crashed the car and began to flee on foot.  (Id. ¶ 36.)  Both Defendants then gave chase, also on foot.  (Cortazzo Dep. at 96, 99; Cortazzo Narrative, Defs.' Ex. B, at 23; Burkhart Dep. at 153-54; Burkhart Narrative, Defs.' Ex. E, at 26.)  Ultimately, another officer pursuing Plaintiff found him hiding under a bed inside a nearby house and took him into custody.  (Defs.' SMF ¶¶ 36, 38.)

     Both Cortazzo and Burkhart received treatment for minor bruising and abrasions at St. Joseph Hospital.  (Id. ¶¶ 28, 32.)  Hospital records show that Cortazzo complained of mild pain and suffered abrasions in the area of his right hip, but walked out of the hospital on his own.  (Defs.' Ex. I at 2, 3-4, 5.)  He was directed to take Tylenol or Motrin for pain.  (Id. at 7.)  Burkhart's hospital records show that he complained of mild pain and soft-tissue tenderness in the area of his left thigh,

---

223 F.3d 220, 223 n.2 (3d Cir. 2000) (emphasis added) (citing Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)).  In this case, Pauley provided the statement just a couple of hours after the incident took place.  Pauley also initialed each and every answer he provided, signed the bottom of every page, and subscribed the last page, on which he indicated that he had been given "the chance to read, correct, and initial [his] statement" and that "everything in this statement [was] true and correct."  (Pauley Stmt., Pl.'s Ex. G, at 6.)  We find that Pauley's statement might be admissible at trial as a recorded recollection under Federal Rule of Evidence 803(5), and we therefore consider it in deciding this motion.  See Fed. R. Evid. 803(5) (permitting the admission of "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, ***shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly***" (emphasis added); see also United States v. Mornan, 413 F.3d 372, 377-78 (3d Cir. 2005) (holding that a witness need not have made the Rule 803(5) record himself if he reviewed and adopted the statement at a time when the subject of the statement was "fresh in [his] memory"); id. at 378 (finding that the accuracy of a recorded recollection may be established by the declarant's contemporaneous signature, indicating that he attested to its accuracy at the time the record was made).

diagnosed as a contusion.  (Defs.' Ex. K at 2-3.)  Burkhart rated his pain level upon discharge as a

"0" out of 10 and, like Cortazzo, walked out of the hospital on his own.  (Id. at 5.)

Plaintiff received treatment for the gunshot wound from St. Joseph Hospital on the night of

the shooting and from Berks County Prison for about a month thereafter.  (See Plaza-Bonilla Dep.

at 248-51.)  Plaintiff said that he suffered from residual physical pain for two months, numbness in

his left hand, and a scar.  (Id. at 172, 250-51, 279.)  Plaintiff also testified that he now suffers from

nightmares, insomnia, and mental trauma as a result of the shooting.  (Id. at 206, 244-45, 251-52,

279.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for

the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute

is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the

district court of the basis for its motion and identifying those portions of the record that it believes

demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the

movant's initial Celotex burden can be met simply by "pointing out to the district court that there

is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving

party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided

in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

P. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making

a factual showing "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In

evaluating the evidence, we take the facts in the light most favorable to the nonmoving party and

draw all reasonable inferences in its favor. Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669,

680 (3d Cir. 2003).  "Speculation, conclusory allegations, and mere denials are insufficient to raise

genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa.

2000).  Indeed, evidence introduced to defeat or support a motion for summary judgment must be

capable of being admissible at trial. Callahan v. AEV, Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999)

(citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir.

1993)).

## III.    DISCUSSION

### A.    Plaintiff's § 1983 Excessive Force Claim[5]

Defendants both move for summary judgment with respect to Plaintiff's excessive force

claim.  For the following reasons, we grant Burkhart summary judgment but deny summary

judgment for Cortazzo.

---

[5]Although we recognize that the Supreme Court has recently relaxed the rigid, two-step
framework applicable to § 1983 cases in which the defense of qualified immunity is raised, see
Pearson v. Callahan, --- U.S. --- , 129 S. Ct. 808, 815-16 (2009), we see no reason, based on the
circumstances in this particular case, to exercise our discretion and deviate from that framework.
See id. at 818.  We therefore consider first whether the facts taken in the light most favorable to
Plaintiff establish that a constitutional violation has occurred.  See Saucier v. Katz, 533 U.S. 194,
201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)), amended by, Pearson, 129 S. Ct. at
818.

To state a claim of excessive force under the Fourth Amendment, a plaintiff must establish "that a 'seizure' occurred and that [such seizure] was unreasonable." Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989)). Even if Defendants used excessive force, they would be entitled to qualified immunity, and thus immunity from suit, if "the right that was violated was [not] clearly established, or, in other words, 'whether it would [not] be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (quoting Saucier, 533 U.S. at 202)). We first address the Defendants' use of force and then determine whether such force violated a clearly established right.

### 1.   Whether Defendants Used Excessive Force

Plaintiff alleges that Cortazzo and Burkhart used excessive force because Plaintiff was unarmed, posed no threat to Defendants, and made no threat of violence to Defendants. Defendants respond that Burkhart did not use excessive force because he never seized Plaintiff and that Cortazzo's use of force was objectively reasonable. We consider each Defendant's use of force separately.

### a.   Burkhart's use of force

We turn first to Burkhart's use of force. As noted above, a Fourth Amendment excessive force claim requires proof that a "seizure" occurred. See Abraham, 183 F.3d at 288 (citing Brower, 489 U.S. at 599 (1989)). However, "[a] seizure occurs only 'when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" United States v. Crandell, --- F.3d --- , C.A. No. 07-4004, 2009 WL 197981, at *4 (3d Cir. Jan. 29, 2009) (quoting Terry v. Ohio, 392 U.S. 1, 19-20 n. 16 (1968)); see also Curley, 298 F.3d at 279. Although

8

a seizure by physical force can occur when a police officer actually shoots a suspect, see, e.g., Tennessee v. Garner, 471 U.S. 1, 7 (1985), firing a shot that misses a suspect does not constitute a seizure by physical force.  See Manelski v. Tinicum Twp., Civ. A. No. 07-1487, 2008 WL 5250691, at *2 (E.D. Pa. Dec. 17, 2008) (citing Estate of Rodgers ex rel. Rodgers v. Smith, 188 F. App'x. 175, 180-81 (4th Cir. 2006)); Carr v. Tatangelo, 338 F.3d 1259, 1270-71 (11th Cir. 2003)).  Because it is undisputed that none of the shots fired by Burkhart actually struck Plaintiff, we find that Burkhart did not physically seize Plaintiff by discharging his firearm.

To establish a seizure by a show of authority, a plaintiff must show both that the officer objectively showed authority and that the plaintiff actually submitted to such authority.  See United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (citing California v. Hodari D., 499 U.S. 621, 626-27, 628 (1991)).  No seizure occurs, however, if the suspect does not yield after shots are fired at him.  See generally Bella v. Chamberlain, 24 F.3d 1251, 1256 (10th Cir. 1994) (finding that shots fired at plaintiff's helicopter constituted a show of authority but not a seizure because the plaintiff did not submit); Cole v. Bone, 993 F.2d 1328, 1333 (8th Cir. 1993) (finding that "the shots that were fired at [plaintiff's] truck and that did not hit [plaintiff] were not seizures because they . . . failed to produce a stop"); see also Adams v. City of Auburn Hills, 336 F.3d 515, 519-20 (6th Cir. 2003) (listing cases).  Because it is undisputed that Plaintiff continued to flee after the shots were fired, we also find that he was not seized by show of authority.  Consequently, we grant summary judgment in favor of Burkhart as to Plaintiff's excessive force claim against him.[6]

_____

[6]Although Plaintiff argues in his Response to Defendants' Motion that he may still pursue a Fourteenth Amendment substantive due process claim against Burkhart, he did not assert that claim in his Amended Complaint.  Moreover, the Fourth Amendment is the exclusive constitutional avenue for pursuing excessive force claims.  See Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this

b.     Cortazzo's use of force

It is undisputed that Cortazzo seized Plaintiff by physical force when he shot him.  Cortazzo argues, however, that the undisputed record evidence establishes that his use of force under the circumstance was objectively reasonable.  Plaintiff responds that genuine issues of material fact surrounding the use of force in this case require that we deny Defendant's Motion for Summary Judgment.

As noted above, after establishing that a seizure occurred, the plaintiff must show that such seizure was "unreasonable."  See Abraham, 183 F.3d at 288 (citing Brower, 489 U.S. at 599).  Because Cortazzo applied deadly force, see, e.g., Garner, 471 U.S. at 4, we must determine whether, "giving due regard to the pressures faced by the police, [it was] objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others[.]" Abraham, 183 F.3d at 289.  To that end, we consider (1) "'the severity of the crime at issue,'" (2) "'whether the suspect pose[d] an immediate threat to the safety of the officer or others,'" and (3) "'whether [the suspect] . . . actively resist[ed] arrest or attempt[ed] to evade arrest by flight.'" Id. (quoting Graham, 490 U.S. at 109).  The officer's underlying motive or intent is irrelevant.  See Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (citing Abraham, 183 F.3d 289)).  We consider each Graham factor seriatim.

_____

sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." (footnote omitted)); see also Abraham, 183 F.3d at 288 (citing Graham, 490 U.S. at 393-94)).  As such, we reject this argument as improperly raised and otherwise meritless.  See Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" (quoting Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)).

i.      Severity of the crime at issue

Although Plaintiff initially provided false identification to Cortazzo, the offense that actually incited the use of deadly force in this case was the vehicular assault on the officers.[7]  As the Supreme Court observed in Brosseau v. Haugen, 543 U.S. 194 (2004) (per curiam), a car can be a deadly weapon.  See id. at 200 (citing Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992)); see also United States v. Aceves-Rosales, 832 F.2d 1155, 1157 (9th Cir. 1987) ("It is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon."); cf. Burke v. Massan, 904 F.2d 178, 186 (3d Cir. 1990) (noting that "'[a]utomobiles represent the most lethal and deadly weapons today entrusted to our citizenry'" (quoting Woodson v. AMF Leisureland Ctrs., Inc., 842 F.2d 699, 704 (3d Cir. 1988))).  Nevertheless, Plaintiff was only convicted of *simple* assault, which Pennsylvania classifies as merely a second degree misdemeanor.[8]  See 18 Pa. Cons. Stat. Ann. § 2701(b); see also Defendants' Ex. M. at 1.  Thus, a reasonable jury could find, on this record, that the crime precipitating the use of deadly force was not a serious one and could not justify Cortazzo's use of force.

ii.      Immediate threat to the safety of the officer or others

While Plaintiff arguably posed an immediate threat of harm to Defendants' safety at the

---

[7]Plaintiff had also been charged with two counts of attempted first degree murder, two counts of aggravated assault, two counts of recklessly endangering another person, and three counts of criminal trespass.  (Defs.' Ex. M at 1.)  However, all of these other charges were dismissed.  (Id.)  Moreover, Plaintiff was high on cocaine, had cocaine on his person, and had consumed several beers not less than an hour earlier.  (Defs.' SMF ¶¶ 5, 6; Plaza-Bonilla Dep. at 87.)  Nevertheless, Cortazzo was unaware of Plaintiff's use or possession of cocaine at the time these events took place.  Thus, we cannot consider any potential drug violations when evaluating this factor.

[8]Moreover, Plaintiff did not plead guilty to the provision of 18 Pa. Cons. Stat. Ann. § 2701(a) which criminalizes "negligently caus[ing] bodily injury to another *with a deadly weapon*."  18 Pa. Cons. Stat. Ann. § 2701(a)(2) (emphasis added).

11

moment he struck them with the car, a reasonable jury could find on this record that Cortazzo did not shoot Plaintiff until ***after*** he and Burkhart were struck and Plaintiff was driving ***away*** from everyone on the scene.  Moreover, construing the record facts in Plaintiff's favor, neither Defendant was seriously injured by the car, and Plaintiff caused minimal damage to the other parked vehicle. As such, the record evidence could support a finding that the risk posed to Cortazzo by the slow-moving car, even if driven by someone under the influence of alcohol, was minimal and could not justify the use of deadly force in self-defense.  See, e.g., Abraham, 183 F.3d at 293-95 (finding genuine issue as to whether officer reasonably acted in self-defense against car driven by drunk suspect where fatal shot came through driver's side window and officer was not significantly injured, even if struck by the car).

In addition, taking the facts in the light most favorable to Plaintiff, the evidence demonstrates that no one was in the car's path when Cortazzo fired upon Plaintiff.  (See Plaza-Bonilla Dep. at 171, 174 (indicating that Defendants did not shoot at Plaintiff until after he was pulling out of the parking space); Burkhart Narrative, Defs.' Ex. E, at 26 (indicating that Pauley was behind Burkhart when the shooting occurred); Pauley Stmt., Pl.'s Ex. G, at 2 (indicating that Defendants were off to the side of the car when they fired at Plaintiff as he drove out into the street).)  Moreover, genuine issues remain as to how fast Plaintiff was driving when he fled the scene.  Consequently, a reasonable jury could conclude, based on this record, that  Cortazzo's use of deadly force was not justified by an immediate threat posed by Plaintiff to the safety of others.  See, e.g., Abraham, 183 F.3d at 292-93 (finding genuine issue regarding threat to others where it was unclear how close officers were when suspect backed up towards them and how fast the suspect was driving, and noting that "the fact that [the suspect] collided forcefully with a parked car . . . [did] not by itself show that [he] posed a

12

significant threat of death or serious physical injury to other people").

iii.   Actively resisting arrest or attempting to evade arrest by flight

It is undisputed that Plaintiff was attempting to evade arrest by flight.  However, this factor alone cannot justify the use of deadly force.  Rather, the defendant must also pose a significant threat of death or serious physical injury to the officers or others.  Abraham, 183 F.3d at 289.  Having found genuine issues of material fact surrounding the threat of death or serious physical injury Plaintiff posed to Cortazzo or others, we cannot find that Plaintiff's mere attempt to evade arrest by flight justified the use of deadly force.

Because the facts, taken in the light most favorable to Plaintiff, do not support a finding that Cortazzo's use of force was reasonable under the circumstances, we cannot grant Cortazzo summary judgment on that basis.  We must now consider whether Cortazzo is entitled to qualified immunity.

2.   Qualified Immunity

Cortazzo argues that, even if his use of force was unreasonable, he is entitled to qualified immunity because his use of force falls into the "'hazy border between excessive and acceptable force.'" (Defs.' Mot. at 16 (quoting Brosseau, 543 U.S. at 201).)  Specifically, he contends that whether the contours of the right were clearly established depends on the specific facts of a given case, and that no case squarely governs the use of force under the circumstances in this case.  Plaintiff responds that there need not be a precedent directly on point for the right to be clearly established and argues that the United States Court of Appeals for the Third Circuit's decision in Abraham clearly established the right at issue here, despite minor factual dissimilarities with the instant case.

A right is "clearly established" for qualified immunity purposes if "'it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted.'" Curley, 499 F.3d at 207 (quoting Saucier, 533 U.S. at 202)).  Thus, "'[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir. 2008) (quoting Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005) (internal quotations omitted)).

In Brosseau, the Supreme Court held that it was not clearly established at that time whether officers were justified in shooting a disturbed felon, set on avoiding capture through vehicular flight, who put persons in the immediate area at risk from that flight.  Brosseau, 543 U.S. at 200.  The Court observed that "this area is one in which the result depends very much on the facts of each case" and found that it was not clearly established whether a constitutional right had been violated because there was no case that "squarely govern[ed]." Id. at 201.  However, the Court also acknowledged that there had been several decisions post-dating the conduct involved in Brosseau (but which the Court could not consider) that had addressed the issue, including the Third Circuit's decision in Abraham.  Id. at 200 n.4.

In Abraham, the Third Circuit found excessive force had been used under a set of facts strikingly similar to those in this case.  The decedent, Abraham, had been observed shoplifting clothes in a Macy's department store and was heading to his car in the parking lot when the defendant and other security guards approached him.  183 F.3d at 283.  The defendant had been told that Abraham was possibly intoxicated.  Id.  Shortly after Abraham got into the car, the defendant approached from the rear and called out to him to stop.  Id.  However, by the time the defendant reached the rear driver's side of the car, Abraham had begun backing up, ultimately striking another car parked in the opposing row of cars.  Id.  The parties disputed how much of a threat Abraham

14

posed to others when he began backing up because there were genuine issues regarding how fast the car was moving, where the defendant was standing at that moment, how close surrounding cars were, and the extent to which the security guards were hemmed in.  Id. at 284.

After Abraham hit the other parked car, the defendant got in front of the car and repeatedly told Abraham to stop.  Id.  The parties disputed exactly where in front of the car the defendant was standing and when she drew her weapon.  Id. at 284-85.  Abraham then put the car into gear and began to drive forward.[9] Id. at 285.  The defendant then fired one shot through the front driver's side window, striking Abraham in the arm and chest.  Id. at 285.  Abraham ultimately succumbed to his injuries.  Id. at 286.

Abraham's estate argued that the defendant fired from the side of the car and thus was safely out of harm's way when she used deadly force.  Id.  The estate further argued that the physical evidence suggested that Abraham had not been driving recklessly or in a manner that threatened the lives of others.  Id.  The Third Circuit found that summary judgment was inappropriate because there were genuine issues as to what risk Abraham posed to others.  Id. at 292-93.  Specifically, it was unclear how close the defendant and other guards were to Abraham's car as he was backing up and how fast Abraham drove in reverse.  Id. at 293.  Moreover, the Court found that the mere fact that Abraham struck another vehicle did not itself show that he posed a significant threat of death or serious physical injury to other people.  Id.

The Third Circuit also found summary judgment inappropriate because there were genuine issues as to what risk Abraham posed to the defendant's life.  Id. at 293-94.  The court found that

---

[9]The parties disputed whether Abraham ever struck the defendant with the car.  Id. at 284, 285.

there was conflicting evidence regarding where the defendant was standing when she shot Abraham, and that, even if she were hit or brushed by Abraham's car, the evidence showed that the defendant had not been significantly injured—suggesting a genuine issue about whether the defendant had time to get out of the way and, thus, the gravity of the threat posed to her. Id. at 294. Moreover, the court noted that "[a] passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect." Id. (citing Ellis v. Wynalda, 999 F.2d 243, 247 (7th Cir. 1993)). Based on the record before it, the Court could not "say as a matter of law that it was objectively reasonable for [the defendant] to believe that she was in danger." Id. at 294. As such, the court thought a jury should determine both whether the defendant fired after she was out of harm's way and whether Abraham's conduct was so dangerous as to warrant the use of deadly force. Id. at 295.

Although there is some factual disparity between Abraham and the instant case, there need not be "'a previous precedent directly on point'" for "reasonable officials to be on notice that their conduct would be unlawful." Larsen, 154 F.3d at 87 (quoting Acierno v. Cloutier, 40 F.3d 597, 620 (3d Cir. 1994)); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (holding that the "clearly established" standard does not require that "the very action in question has previously been held unlawful"). Rather, "there need only be 'some but not precise factual correspondence between relevant precedents and the conduct at issue,' Pro v. Donatucci, 81 F.3d 1283, 1292 (3d Cir. 1996), so that 'in the light of pre-existing law the unlawfulness [would be] apparent.'" Larsen, 154 F.3d at 87 (quoting Anderson, 483 U.S. at 640). Taking the record facts in the light most favorable to Plaintiff, we find that this case involves the same right as that established in Abraham. We also find that, based upon the record as it now exists, there remain genuine issues of material fact that must be resolved before we can determine whether the use of force in this case was objectively reasonable.

16

Cf. Curley, 298 F.3d at 278 (determining that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis"). Consequently, we cannot grant Cortazzo qualified immunity at this time and therefore deny his Motion.

        B.     Plaintiff's Common Law Claims[10]

In addition to his § 1983 claim, Plaintiff alleges common law assault and battery claims against Defendants.  Defendants move for summary judgment with respect to Plaintiff's common law tort claims.  For the following reasons, we grant Burkhart summary judgment with respect to Plaintiff's assault claim, but deny his Motion with respect to the battery claim.  We also deny Cortazzo's Motion with respect to both the assault and battery claims.

Defendants argue that any alleged torts committed by them were privileged under Pennsylvania law because their use of deadly force was reasonable under the circumstances. Plaintiff does not respond to the Defendants' arguments regarding privilege.  Although "[a] police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty," he nevertheless "may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  "The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery."  Id. Because the Defendants' use of force was unreasonable (taking the facts in the light most favorable

_____

[10]Because we consider Plaintiff's Pennsylvania common law claims under our supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, the Erie doctrine requires that we apply Pennsylvania decisional law to the substance of such claims.  See generally Chin v. Chrysler LLC, 538 F.3d 272, 277 (3d Cir. 2008).

to the Plaintiff), Defendants cannot rely on the defense of privilege, and, Plaintiff's assault and battery claims therefore must survive summary judgment if he can establish all the elements of such claims.

Under Pennsylvania law, an assault occurs when: (1) "one acts with the unprivileged intent to put another in reasonable and immediate apprehension of harmful or offensive conduct"; and (2) that act "does cause such apprehension." Proudfoot v. Williams, 803 F. Supp. 1048, 1054 (E.D. Pa. 1992) (citing Cucinotti v. Ortmann, 159 A.2d 216 (1960)).  A battery, conversely, is defined as a "'harmful or offensive *contact*' with the person of another." C.C.H. v. Phila. Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008) (quoting Dalrymple v. Brown, 701 A.2d 164, 170 (1997) (emphasis added)). An attempted battery constitutes an assault.  See Restatement (Second) Torts § 21(1)(a) (stating that an assault occurs where one acts with the intent to cause a harmful or offensive contact with the person of another, and where the other is thereby put in imminent apprehension of such attempted contact); see also Renk, 641 A.2d at 294-95 (quoting § 21 of the Restatement (Second)).

Taking the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that both Defendants intended to cause a harmful or offensive contact with him.  Moreover, the undisputed facts show that the shot fired by Cortazzo did strike Plaintiff, thereby causing a harmful or offensive contact, but that none of the bullets Burkhart fired ever struck Plaintiff; thus, Burkhart did not cause a harmful or offensive contact with Plaintiff.  We therefore deny Cortazzo summary judgment but grant Burkhart summary judgment with respect to Plaintiff's battery claims.  Finally, because a reasonable jury could find that both Defendants either attempted to or successfully did batter Plaintiff and that Plaintiff was aware that Defendants were shooting at him  (see Plaza-Bonilla Dep. at 170, 174 (Plaintiff says he realized he was being shot at as he was pulling onto the street);

18

id. at 176 (Plaintiff says he did not realize he had been shot until he was halfway down the street)), we deny both Defendants summary judgment with respect to the assault claims.

C.   Defendants' Assault and Battery Claims

Finally, Defendants filed compulsory counterclaims against Plaintiff for assault and battery pursuant to Federal Rule of Civil Procedure Rule 13(a), asking that we impose a judgment against Plaintiff, that Plaintiff recover nothing, and that they receive "relief in recoupment damages of the same kind and nature as that sought by Counterclaim Defendant in an amount to be determined at trial . . . ."  (Ans. at 11.)   Plaintiff seeks summary judgment on Defendants' recoupment counterclaims, and Defendants' seek summary judgment as to Plaintiff's liability for their recoupment counterclaims because Plaintiff pleaded guilty to simple assault.

Plaintiff contends that Defendants' claims must fail for three reasons: (1) the Defendants' tort claims are barred by the applicable statute of limitations; (2) Defendants cannot obtain affirmative relief after the running of the limitations period by characterizing their request for a "set-off" as a claim for recoupment; and (3) Defendants' request for affirmative relief is redundant to their affirmative defense of contributory negligence.[11]  Defendants respond that: (1) they do not seek affirmative relief because such relief would be barred by the statute of limitations[12]; and (2) their counterclaims are not redundant or duplicative because their intentional tort claims involve a higher level of intent than does contributory negligence.  We first address whether Defendants have raised

---

[11]Plaintiff does not respond to Defendants' request for summary judgment as to his liability for their tort claims.

[12]Although Defendants' causes of action accrued on July 12, 2005, when they sustained their injuries, they did not file their counterclaims until August 20, 2008.  By statute, assault and battery claims must be brought within two years of when they accrue.  See 42 Pa. Cons. Stat. Ann. § 5524(1).

valid recoupment claims, and then determine whether they are entitled to judgment as a matter of law regarding Plaintiff's liability.

              1.        <u>Whether Defendants Have Brought Proper Recoupment Claims</u>

Under Pennsylvania law, "a counterclaim encompasses both a set-off and a recoupment." <u>Stulz v. Boswell</u>, 453 A.2d 1006, 1008 (Pa. Super. Ct. 1982) (citing 6 Standard Pennsylvania Practice 2d § 29:2). Unlike a set-off, which entitles the defendant to an affirmative judgment, a recoupment "concerns solely the claim asserted by the plaintiff, and no affirmative relief may be obtained by the defendant." <u>Id.</u> (citing <u>Commonwealth v. Berks County</u>, 72 A.2d 129 (1950); 6 Standard Pennsylvania Practice 2d § 29:4); <u>see also</u> <u>Harmer v. Hulsey</u>, 467 A.2d 867, 869 (Pa. Super. Ct. 1983). Moreover, a defendant pursuing recoupment may only assert claims arising out of the same transaction or occurrence as the plaintiff's claims, and may only "reduce the award obtained by a plaintiff . . . ." <u>Stulz</u>, 453 A.2d at 1009. Nevertheless, because a counterclaim couched as a recoupment claim is an equitable remedy, it is not subject to the statute of limitations. <u>Id.</u> at 1008-09 (citing <u>Provident Nat'l. Bank v. United States</u>, 507 F. Supp. 1197 (E.D. Pa. 1981)); <u>see also</u> <u>Harmer</u>, 467 A.2d at 869); <u>Household Consumer Disc. Co. v. Vespaziani</u>, 415 A.2d 689, 694 (1980). Put simply, a valid recoupment claim has three prerequisites: (1) it must arise from the same transaction or occurrence as the opposing claim; (2) it must seek relief of the same kind or nature as that sought in the opposing claim (<u>e.g.</u>, damages); and (3) it must seek an amount not in excess of the opposing claim. <u>See generally</u> 3 Moore's Federal Practice – Civil § 13.11; <u>Kline v. Blue Shield of Pa.</u>, 556 A.2d 1365, 1368 n.3 (Pa. Super. Ct. 1988) (observing the parity between the federal and Pennsylvania doctrines of recoupment); <u>cf.</u> 20 Am. Jur. 2d, Counterclaim, Recoupment, Etc. § 5 ("[R]ecoupment applies only by way of reduction, mitigation, or abatement of damages

claimed by the plaintiff . . . .").

Plaintiff concedes in his Reply that Defendants' counterclaims are timely to the extent that they seek recoupment and that Defendants' counterclaims arise from the same transaction or occurrence as his claims against them.  Thus, the first prerequisite for recoupment is satisfied. Moreover, because both Plaintiff and Defendants seek money damages, the second prerequisite for recoupment is satisfied.  Finally, because Plaintiff concedes that we may properly consider those portions of Defendants' counterclaims that sound in recoupment, see Stulz, 453 A.2d at 1009, Defendants' claims satisfy the third prerequisite for recoupment if we strike any extraneous requests for relief.[13]

Plaintiff nevertheless contends that Defendants impermissibly seek the affirmative relief of a set-off, rather than recoupment, because Defendants raise a new cause of action and because they seek a "judgment" against Plaintiff.  However, because Defendants have explicitly requested relief in recoupment and have not alleged any right to recover in excess of plaintiff's recovery—notwithstanding their request for a "judgment" and attorneys' fees[14]—we find that they

---

[13]Defendants have demanded a judgment against Plaintiff, that Plaintiff "recover nothing, for relief in recoupment damages of the same kind and nature as that sought by Counterclaim Defendant in an amount to be determined at trial, for attorneys' fees and costs, and further relief as the Court may deem just and proper."  (Answer at 11.)  Although we find nothing improper with Defendants' general request for a judgment or their specific request for recoupment damages, Defendants have cited to no authority entitling them to attorneys' fees for their generic tort claims.  See Jones v. Muir, 515 A.2d 855, 858 (Pa. 1986) (generally observing that each party to a litigation is required to pay his or her own counsel fees in the absence of statute or contract); Corace v. Balint, 210 A.2d 882, 887 (Pa. 1965) ("[T]here can be no recovery for counsel fees from the adverse party to a cause, in the absence of express statutory allowance of the same, or clear agreement by the parties, or some other established exception." (internal citations omitted)); see also 42 Pa. Cons. Stat. Ann. § 2503 (listing the types of plaintiffs entitled to receive counsel fees, none of which applies in this case).

[14]See supra note 13.

21

have properly asserted recoupment claims.  Cf. J.B. Hunt Transp, Inc. v. Falcon Transp. Co., 723 F.

Supp. 359, 361 (W.D. Pa. 1989) (refusing to find that a counterclaim, *which made no express*

*mention of recoupment*, constituted a recoupment claim where the defendant demanded judgment

in the amount of the damages listed in the complaint); Davis v. Berks County, Civ. A. No. 04-1795,

2007 WL 516128, at *11 (E.D. Pa. Feb. 8, 2007) (denying defendant's request to construe his assault

and battery counterclaims as recoupment claims where the defendant sought both a judgment *and*

*punitive damages*).  We likewise reject Plaintiff's contention that Defendants' recoupment claims,

even if properly asserted, are redundant to their affirmative defense of contributory negligence and

should be dismissed.[15]  Consequently, we deny Plaintiff's Motion on such bases.

    2.    Whether Defendants are entitled to judgment as a matter of law on Plaintiff's liability

       Defendants seek judgment as a matter of law regarding Plaintiff's liability on their assault

and battery claims because Plaintiff pleaded guilty to committing simple assault against them, in

violation of 18 Pa. Cons. Stat. Ann. § 2701(a)(1).  By pleading guilty to simple assault under this

provision of the statute, Plaintiff admitted that he "attempt[ed] to cause or intentionally, knowingly

or ***recklessly*** cause[d] bodily injury to another." 18 Pa. Cons. Stat. Ann. § 2701(a)(1) (emphasis

_____

    [15]We recognize that the United States District Court for the Western District of Pennsylvania held in J.B. Hunt that "a counterclaim for recoupment in a tort case would be functionally equivalent to the affirmative defense of contributory negligence," and is thus redundant because "[b]oth attempt to reduce plaintiff's recovery without seeking affirmative relief for the defendant." J.B. Hunt, 723 F. Supp. at 361.  We nevertheless decline to follow J.B. Hunt because we find that the affirmative defense of contributory negligence and a counterclaim for recoupment are ***not*** "functionally equivalent." Although both achieve the same result, i.e., the diminution of the plaintiff's ultimate recovery, they reach that result in critically different ways.  Contributory negligence reduces the plaintiff's recovery in proportion to the degree his own negligence caused the injury ***to himself***.  See 42 Pa. Cons. Stat. Ann. § 7102(a); see also 36 Pennsylvania Legal Encyclopedia, Negligence § 91. Conversely, a counterclaim for recoupment sounding in tort reduces the plaintiff's recovery by the amount that his conduct caused injury ***to the defendant***.

added).  By contrast, to be liable for the torts of assault and battery the tortfeasor must act with the intent either to commit a battery or to put the victim in imminent apprehension of a battery.  <u>See</u> Restatement (Second) Torts §§ 18(1)(a), 21(1)(a); <u>see also</u> <u>Montgomery v. Bazaz-Sehgal</u>, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999) (citing Restatement (Second) of Torts § 18)); <u>Sides v. Cleland</u>, 648 A.2d 793, 796 (Pa. Super. Ct. 1994) (citing Restatement (Second) of Torts § 21)).  A defendant is not liable for either tort merely because he acts negligently ***or recklessly***.  <u>See</u> Restatement (Second) of Torts §§ 18(2), 21(2).  Because the crime to which Plaintiff pleaded guilty contained a different mens rea than that required for the torts of assault and battery, we cannot grant Defendants judgment as a matter of law with respect to liability solely on the basis of Plaintiff's guilty plea.

Moreover, taking the facts in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff did not intend to strike the Defendants with the car.  (<u>See</u>, <u>e.g.</u>, Plaza-Bonilla Dep. at 154-56, 157, 169 (Plaintiff says he didn't know, when he was trying to drive away, where either Cortazzo or Burkhart was); <u>id.</u> at 157 (Plaintiff says he didn't think Burkhart would be standing directly behind the car when he backed up); <u>id.</u> at 244 (Plaintiff states that "[his] intentions were no harm [sic] to anybody. . . . I know I didn't try to hurt or homicide [sic] anybody"); <u>id.</u> at 271-72 (Plaintiff says he couldn't see Cortazzo when he pulled forward).)  Consequently, we also deny Defendants' request for summary judgment on liability because there remain genuine issues as to the level of intent with which Plaintiff acted when he struck the Defendants.

## IV.    CONCLUSION

For the foregoing reasons, we find that Plaintiff has failed to establish that Burkhart used excessive force against him.  However, there remain genuine issues of material fact regarding the specific circumstances under which Cortazzo used deadly force in this case.  We therefore grant

Burkhart's but deny Cortazzo's respective Motions for Summary Judgment as to Plaintiff's § 1983 excessive force claims.  Moreover, we grant Burkhart's but deny Cortazzo's respective Motions with respect to Plaintiff's battery claims, and deny both Defendants' Motions with respect to Plaintiff's assault claims.  We also deny Defendants' Motion for judgment as a matter of law as to Plaintiff's liability on their assault and battery claims against him.  Finally, we deny Plaintiff's Motion for Summary Judgment in all respects.[16]

An appropriate Order follows.

_____

[16]To clarify, the following claims are proceeding to trial: (1) Plaintiff's excessive force claim against Cortazzo; (2) Plaintiff's battery claim against Cortazzo; (3) Plaintiff's assault claims against Cortazzo and Burkhart; and (4) Cortazzo's and Burkhart's recoupment counterclaims against Plaintiff alleging assault and battery.

24

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HECTOR PLAZA-BONILLA      :          CIVIL ACTION
                              :
         v.                    :
                              :
CHRISTOPHER CORTAZZO, et al.      :          NO.  07-2045

## ORDER

**AND NOW**, this 9th day of March, 2009, upon consideration of Defendants' Motion for Summary Judgment (Docket No. 30), Plaintiff's response thereto, and Defendants' reply thereto, and upon consideration of Plaintiff's Motion for Summary Judgment (Docket No. 29), Defendants' response thereto, and Plaintiff's reply thereto, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion is **GRANTED** with respect to Plaintiff's § 1983 excessive force and common law battery claims against Burkhart, but denied in all other respects.

2.      Plaintiff's Motion is **DENIED** in all respects.

BY THE COURT:

     /s John R. Padova
John R. Padova, J.