IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR IVAN PLAZA-BONILLA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CORTAZZO, et al. | : | NO.  07-2045 |

## ORDER-MEMORANDUM

**AND NOW**, this 9th day of April, 2009, upon consideration of Plaintiff's "Motion for

Separate Trial of Liability and Damages Issues" (Docket No. 42) and Defendants' response thereto,

and upon consideration of Plaintiff's "Motion in Limine Relative to Bad Acts Evidence" (Docket

No. 47) and Defendants' response thereto, **IT IS HEREBY ORDERED** as follows:

1.    Plaintiff's Motion for Separate Trial is **GRANTED in its entirety**.

2.    Plaintiff's Motion in Limine is **GRANTED in part**, in a manner consistent with this

Order-Memorandum.

Plaintiff Hector Plaza-Bonilla ("Plaintiff") brought this action asserting claims pursuant to

42 U.S.C. § 1983 and Pennsylvania common law against Defendants Christopher Cortazzo

("Cortazzo") and James Burkhart ("Burkhart"), both officers in the Reading Police Department.

Plaintiff alleges that Defendants used excessive force and committed assault and battery against him

when they shot him as he attempted to flee arrest.  Defendants assert counterclaims in recoupment,

alleging that Plaintiff committed assault and battery against them when he struck them with a vehicle

in his attempt to flee arrest.

## I.    Plaintiff's Motion to Bifurcate

Plaintiff seeks to bifurcate the upcoming trial into separate liability and damages phases

because he contends that certain evidence Defendants plan to introduce—which covers facts and

events that occurred both before the traffic stop at issue and after Defendants' use of deadly force—is relevant only to damages and would unduly prejudice and confuse the jury with respect to Defendants' liability.  Plaintiff also asserts that bifurcation would serve judicial economy because it would prevent the jury from needlessly considering the issue of damages if they find that Defendants did not use excessive force.  Defendants respond that the challenged evidence is relevant to their liability (as well as damages) and that bifurcating the trial would be inefficient and would unfairly inhibit them from developing their defense.  We find bifurcation is appropriate in this case.

The Federal Rules of Civil Procedure permit a district court to "order a separate trial of one or more separate issues . . ." "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ."  Fed. R. Civ. P. 42(b).  The decision to order a separate trial is discretionary, see Barr Labs., Inc. v. Abbott Labs., 978 F.2d 98, 115 (3d Cir. 1992) (citing Idzojtic v. Pa. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972)), and "separation of issues for trial is not to be routinely ordered."  Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978) (quoting Advisory Committee note to the 1966 amendment of Rule 42(b); 39 F.R.D. 113).  Courts must decide to bifurcate a trial on a case-by-case basis, id. at 824, and the moving party bears the burden of demonstrating that bifurcation "would serve judicial economy, avoid inconvenience, and not prejudice any of the parties."  AstenJohnson v. Columbia Cas. Co., Civ. A. No. 03-1552, 2006 WL 1791260, at *2 (E.D. Pa. June 22, 2006) (citing Spectra-Physics Lasers, Inc. v. Uniphase Corp., 144 F.R.D. 99, 101 (N.D. Cal. 1992)); see also McCrae v. Pitts. Corning Corp., 97 F.R.D. 490, 492 (E.D. Pa. 1983) ("A defendant seeking bifurcation has the burden of presenting evidence that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties.").

The court must also ensure that bifurcating the trial will not interfere with the parties'

Seventh Amendment right to a fair trial.  See In re Paoli R.R. Yard PCB Litig., 113 F.3d 444, 452

n.5 (3d Cir. 1997).  We must take care not to submit to the jury in multiple stages any issues that are

so interwoven that presenting them separately would confuse the jury and create uncertainty.  See

AstenJohnson, 2006 WL 1791260, at *2 (citing Charles Alan Wright & Arthur R. Miller, Federal

Practice & Procedure § 2391 (2d ed.1995)).  Nevertheless, "'[b]ifurcation may . . . be appropriate

where the evidence offered on two different issues will be wholly distinct . . . or where litigation of

one issue may obviate the need to try another.'"  Nyazie v. Kennedy, Civ. A. No. 97-0120, 1998 WL

472504, at *2 (E.D. Pa. July 27, 1998) (quoting Vichare v. Ambac, Inc., 106 F.3d 457, 466 (2d Cir.

1996) (citations omitted)).

      We agree with Plaintiff that bifurcation would generally serve judicial economy because the

jury need not consider evidence of damages at all if they determine that the Defendants are not liable.

Although bifurcation may extend the length of trial, the parties anticipate that a single trial will not

last more than a few days.  Thus, even if the jury reached the issue of damages in a bifurcated trial,

the proceedings will not be lengthy.

      We are nevertheless mindful that bifurcating may prejudice Defendants if the evidence they

intend to present on liability and damages is so interwoven that bifurcation would confuse the jury,

create uncertainty, and undermine judicial economy.  See AstenJohnson, 2006 WL 1791260, at *2

(citing Wright & Miller, supra, § 2391).  Defendants intend to introduce evidence of Plaintiff's

juvenile criminal adjudications and his parole status at the time of the incident, as well as evidence

that, after the shooting, Plaintiff fled on foot through three houses, climbed in and out of windows

and ran along rooflines, and attempted to kick out the window of a police cruiser once captured.  We

examine each piece of challenged evidence to determine whether such evidence could be used in

both the liability and damages phases of a bifurcated trial and the potential prejudice to the parties if such evidence were either admitted or excluded.

We first consider evidence regarding Plaintiff's pre-incident juvenile record and parole status. Defendants contend that this category of evidence is relevant to Defendants' liability, and thus admissible under Fed. R. Evid. 404(b), because it establishes Plaintiff's state of mind at the time of the incident. However, Plaintiff's state of mind is not an element of any of Plaintiff's claims against Defendants, and it is undisputed that Defendants did not know at the time of the incident either that Plaintiff was in violation of his parole or that he had prior criminal convictions. Consequently, this evidence is not relevant to Defendants' liability either for excessive force or assault and battery.[1] See Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) ("The relevant inquiry is 'the reasonableness of the officer's belief as to the appropriate level of force[,]' which 'should be judged from [the officer's] on-scene perspective," and not in the '20/20 vision of hindsight.'" (quoting Saucier v. Katz, 533 U.S. 194, 205 (2001))); Restatement (Second) of Torts §§ 18(a), 21(a) (focusing on the tortfeasor's state of mind).[2]

Moreover, it is unclear from any of the parties' submissions whether Plaintiff was on parole for a juvenile adjudication or an adult conviction at the time of the incident. If Plaintiff were on

---

[1] We recognize that Defendants have recoupment counterclaims against Plaintiff for assault and battery, but Defendants have not argued that bifurcation will adversely affect their ability to present their recoupment claims.

[2] Defendants also expect Plaintiff to testify at trial that he did not intend to hurt the officers when he tried to escape and, on that basis, contend that they should be permitted to probe Plaintiff's "bias, motivations, and desperation in the liability phase[]," as well as his credibility, through the use of this pre-incident juvenile record. (Defs.' Br. in Opp.'n to Pl.'s Mot. for Separate Trial at 5, 6.) However, as we discuss infra, evidence of a witness' prior juvenile adjudications is generally prohibited for impeachment purposes in civil cases by Fed. R. Evid. 609(d).

parole for a juvenile adjudication at the time of the incident, evidence of his parole status would be inadmissible for impeachment purposes under Fed. R. Evid. 609(d). See infra. Because we cannot presently determine whether Plaintiff's parole status would be admissible for impeachment purposes, evidence pertaining to his parole status neither supports nor discourages bifurcation. In sum, evidence pertaining to Plaintiff's pre-incident juvenile history and parole status has no bearing on the decision to bifurcate the trial.

We turn next to evidence of Plaintiff's post-shooting conduct. Plaintiff contends that evidence concerning his conduct immediately after Defendants' use of deadly force has no bearing on the reasonableness of Defendants' use of deadly force and, therefore, should not prohibit bifurcation. Plaintiff also contends that his own post-shooting conduct has limited probative value with respect to his claim for damages. Defendants respond that evidence showing Plaintiff's extensive post-shooting efforts to avoid arrest is directly relevant to their liability because it sheds light on the extent of Plaintiff's injuries, which they assert is a factor that must be considered under Graham v. Connor, 490 U.S. 386 (1989), in determining the reasonableness of the force used. Defendants also contend that Plaintiff's post-shooting conduct is highly probative of damages.

We find as a matter of law that these officers used deadly force when they fired upon Plaintiff. See In re City of Phila. Litig., 49 F.3d 945, 966 (3d Cir. 1995) (observing that a "gunshot which did not kill suspect constitutes 'deadly force'" (citing Ryder v. City of Topeka, 814 F.2d 1412, 1416-17 & n.11 (10th Cir. 1987))); see, e.g., Tennessee v. Garner, 471 U.S. 1, 4 (1985) (finding that officers used deadly force when they fired upon a fleeing felon); cf. Model Penal Code § 3.11(2) ("Purposely firing a firearm in the direction of another person . . . constitutes deadly force."). Defendants incorrectly argue that the extent of Plaintiff's injuries is a necessary factor to be

considered in determining whether the use of deadly force was objectively reasonable under the Fourth Amendment.  Graham stated no such requirement, and recent Third Circuit precedent imposes no such requirement.  See, e.g., Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006).[3] Consequently, the extent of Plaintiff's injuries would be irrelevant to the determination of the reasonableness of Defendants' conduct and would therefore be inadmissible during the liability phase of a bifurcated trial.  Nevertheless, such evidence is highly probative of Plaintiff's damages and, because it has the potential to unduly prejudice the Plaintiff with respect to Defendants' liability, such evidence does provide a basis for bifurcation.

Based on our analysis, it appears that Defendants' liability and damages evidence is not so

---

[3]As the Court summarized:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering " 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Carswell [v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004)] (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865).  Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Couden, 446 F.3d at 497.  Although the extent of a plaintiff's injuries is clearly relevant to damages, it simply has no bearing on the Fourth Amendment reasonableness of Defendants' use of deadly force under the circumstances of this case.  Compare Third Circuit Model Civil Jury Instructions § 4.9, Comment (2009) (indicating that "[p]hysical injury is relevant but it is not a prerequisite of an excessive force claim" in deadly force cases not amenable to analysis under Garner) with Third Circuit Model Civil Jury Instructions § 4.9.1, Comment (2009) (not mentioning the extent of the plaintiff's injuries in instruction covering Garner deadly force cases and suggesting that, "if the court can resolve as a matter of law whether the force used was deadly or not, the court should rule on this question and should provide either Instruction 4.9 or Instruction 4.9.1 but not both").

interwoven that bifurcating the trial would either significantly infringe upon Defendants' right to a fair trial or undermine judicial economy.[4]   Rather, we find that bifurcating the trial into separate liability and damages phases will promote judicial economy and avoid prejudice to the Plaintiff, without unduly elongating and complicating the trial or imposing a hardship on Defendants.

## II.    Plaintiff's Motion in Limine

Plaintiff argues that: (1) evidence of his juvenile criminal adjudications is patently inadmissible under Fed. R. Evid. 609(d); (2) alternatively, any evidence of his juvenile adjudications and bad acts should be excluded under Fed. R. Evid. 403 because of its limited probative value; and (3) evidence of his post-shooting conduct should also be excluded pursuant to Fed. R. Evid. 403. Defendants respond that: (1) evidence of Plaintiff's post-shooting conduct is highly probative of damages; (2) Plaintiff's juvenile adjudication for receiving stolen property, a crimen falsi offense, is admissible under Fed. R. Evid. 609(a)(2); and (3) Plaintiff's pre-incident juvenile record is highly probative of his credibility and of damages.

We agree with Plaintiff that Defendants may not offer evidence of his juvenile adjudications under Fed. R. Evid. 609(d) for ***impeachment*** purposes.  See Powell v. Levit, 640 F.2d 239, 241 (9th Cir. 1981) ("The trial court has no discretion to admit [juvenile adjudication] evidence in a civil proceeding." (citing 3 Weinstein's Evidence, ¶ 609(05), at 609-86 (1978))); see also 28 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 6138 (2008) ("[T]he legislative history of

---

[4]Defendants themselves concede that "the only evidence and testimony [regarding Plaintiff's damages] that would be severed is the testimony of Plaintiff."  (Defs.' Br. in Opp.'n to Pl.'s Mot. for Separate Trial at 6.)

subdivision (d) clearly reflects the intent of Congress to permit exceptions only in criminal cases.").[5] However, Plaintiff's juvenile criminal history may be relevant to damages under Fed. R. Evid. 404(b), depending on Plaintiff's demands and proofs at trial.  See United States v. Rogers, 918 F.2d 207, 210-11 (D.C. Cir. 1990) (finding that evidence of the defendant's juvenile bad acts used to rebut his defenses fell outside the scope of Rule 609 because it was not introduced to attack his credibility); United States v. Peterson, 867 F.2d 1110, 1115 (8th Cir. 1989) (recognizing the distinction between Rule 404(b) and Rule 609(d)), overruled on other grounds, United States v. Richardson, 439 F.3d 421 (8th Cir. 2006).  We therefore will refrain from ruling until trial whether such evidence is admissible with respect to damages.

As for Plaintiff's status as a parolee at the time of the incident, we likewise find that it is premature to determine the admissibility of such evidence on the basis of what counsel expects Plaintiff's trial testimony will be, and we will not now decide to permit or exclude such evidence.[6] Finally, as discussed above, Plaintiff's post-shooting conduct is not relevant to Defendants' liability. However, we will not determine before trial whether and to what extent evidence relating to such conduct is admissible to prove or rebut damages.

---

[5]We therefore reject Defendants' argument that Plaintiff's juvenile adjudication for receiving stolen property, in violation of 18 Pa. Cons. Stat. Ann. § 3925, is proper grounds for impeachment under Fed. R. Evid. 609(a)(2) as a crimen falsi offense under Pennsylvania law.  (See Defs.' Br. in Opp.n to Pl.'s Mot. in Limine at 7 (citing Commonwealth v. Kaster, 446 A.2d 286, 289 (Pa. Super. Ct. 1982); Roach v. Zimmerman, 677 F. Supp. 368, 372-73 (E.D. Pa. 1987)).)  But see United States v. Potter, Civ. A. No. 08-4518, 2009 WL 320605, at *3 n.3 (E.D. Pa. Feb. 6, 2009) ("If theft is not crimen falsi [under 609(a)(2)], then arguably receiving stolen property is not crimen falsi.").

[6]We also think it premature to rule on the admissibility of evidence pertaining to Plaintiff's prior drug use or possession, including drug use on the date of the incident at issue, or evidence that drugs were found in the car after the shooting.

### III.     Conclusion

For the foregoing reasons, we grant Plaintiff's "Motion for Separate Trial of Liability and Damages Issues" in its entirety, and grant his "Motion in Limine Relative to Bad Acts Evidence" in part, in a manner consistent with this Order-Memorandum.


BY THE COURT:



  /s John R. Padova
John R. Padova, J.

9